## Daugherty's Admr. v. Louisville & Nashville Railroad Company.

(Decided December 19, 1924.)

### Appeal from Lee Circuit Court.

1. Railroads—Lookout for Trespassers Not Required.—Railroad owed drunken trespasser no duty to be on lookout for his safety, though its agent knew of his previous presence on right of way, if he had afterwards reached a place of safety and then returned to right of way.

2. Railroads—Evidence Held to Make Cause of Death Speculative Warranting Peremptory Instruction for Defendant.—Evidence leaving in doubt and speculation whether decedent was struck by freight train while wandering on the track in drunken stupor to its agent's knowledge, or fell from train while he attempted to board it, or met his death while trespassing on tracks after having safely reached his home, held to warrant peremptory instruction for defendant.

3. Negligence—Verdict Should be Directed for Defendant, Unless Injury Proximate Result of Defendant's Negligence.—One seeking to recover for injuries must establish not only injury and negligence, but also that negligence was proximate cause of injury, and where, under all the evidence, injury may as reasonably be attributed to some independent cause for which defendant would not be responsible, verdict should be directed for defendant.

J. MOTT McDANIEL for appellant.

ASHBY M. WARREN, WOODWARD, WARFIELD & DAWSON, C. S. LANDRUM, ROSE & STAMPER and HUNT NORTHCUTT & BUSH for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

In this action, brought by appellant against the appellee for damages on account of the death of appellant's decedent, the lower court at the close of appellant's case gave a peremptory instruction in favor of the appellee, and the only question before us is the propriety of the lower court's action in this regard.

Evelyn, a little hamlet, is a station of the appellee between Ravenna and Beattyville. Over this branch of the appellee's railroad, the trains are dispatched by telephone, and for that purpose the appellee maintains at Evelyn an operator at all hours of the day and night. Communication between Evelyn and Ravenna, a terminal and dispatching point for the railroad, is, by telephone, practically instantaneous. There are three shifts of operators at Evelyn, one being from 7:30 a. m. to 3:30 p. m.; the second from 3:30 p. m. to 11:30 p. m., and the third from 11:30 p. m. to 7:30 a. m. There are at Evelyn two tracks of the appellee, the main track and the siding. About twenty-three rail-lengths north of the station, there is a decided curve in the tracks. The siding and main track come together beyond this curve. Appellant's decedent, Hagerty Daugherty, at the time of his death, lived with his sister north of the appellee's station and just around this curve, his home being about forty-five rail-lengths from the depot.

On the afternoon of June 12, 1921, Daugherty came to the appellee's depot at Evelyn, where he remained until a little after midnight. Meeting some friends, he began drinking with them and drank more or less steadily during the afternoon and evening, and once or twice even with the appellee's operator. As Daugherty drank, his spirits mounted and he became somewhat hilarious and boisterous. The operator on the evening shift left about 11:30 when his successor, Miss Jennie Linn, now Mrs. Don Lannen, came on duty. By this time it seems that everybody had left the station except Daugherty and Miss Linn. Daugherty became more and more boisterous and Miss Linn became alarmed. She endeavored to persuade him to go home, at first without avail, but finally on her procuring him a lantern, Daugherty, who was then quite drunk, finally consented to go home. Miss Linn saw him go up appellee's right of way towards his home, but whether he was on the tracks of the siding or by the side of them, she does not remember. He was staggering from side to side, but was still able to get along, and the last she saw of him was when he disappeared with his lantern around the curve.

About an hour later, a freight train coming from Ravenna towards Beattyville passed through this siding. This was the only train that did pass through this siding from 11:30 p. m. until after four o'clock the following

morning, at which time the body of Daugherty was found between the rails of the siding just beyond the curve. The upper part of the body showed very few marks, but the legs were badly mangled and a part of the foot or heel was found on the outside of the rails. The record is silent as to what became of the lantern, but Daugherty's cap was found wedged under his body between the cross ties, and the cinders beneath the body were blood soaked. The engineer and fireman of the train which passed through this siding testified that although they were keeping a lookout at this point, they did not see any one on the track nor did they know that their train had run over anybody, if it did run over anybody, until they received a telegram at Elkatawa, a station near Jackson, some two hours after they had left Evelyn. On receipt of this telegram, they at once inspected the wheels and under parts of the engine, and the wheels and the brake beams of some eight or ten cars immediately behind the engine and could discover no trace of blood or flesh on any part of the mechanism of the engine or cars inspected. This was all the evidence introduced bearing on how the death of Daugherty was brought about.

On the authority of the cases of Glenn's Admr. v. L. & N., 90 S. W. 975, 28 K. L. R. 949; Fagg's Admr. v. L. & N., 111 Ky. 30, 63 S. W. 580; C., N. O. & T. P. Ry. Co. v. Marrs' Admx., 119 Ky. 954, 85 S. W. 188, the appellant urges that the court should have submitted this case to the jury. The doctrine laid down by those cases in substance is this: where an agent or employe of a railroad knows that an individual, even though a trespasser, is on the right of way of a railroad in a drunken and helpless condition and such agent or employe can by the exercise of ordinary care warn those in charge of the railroad's trains in time for them by the exercise of ordinary care to avoid running over such individual, then a failure so to warn is negligence, and if the individual be run over or hurt by reason of such failure, the railroad is responsible.

We doubt very much whether the evidence in this case as to the condition of appellant's decedent, measures up to the requirements of this rule. Although he was very drunk, the evidence does not show that he was so drunk as to be helpless, and although he was staggering, he had managed to get at least two-thirds of the way home without material trouble. But be that as it may, and conceding though expressly not deciding that the

evidence brings the appellant's case within the limits of this rule, we do not think the evidence discloses that the breach of any duty appellee owed Daugherty on account of its knowledge of his drunken condition, was shown to have been the proximate cause of his death. True it is, that although she did not, Miss Linn could have telephoned almost instantaneously to Ravenna and before the train which ran through this siding left that point and so have warned the train dispatcher, who could have in turn warned those in charge of said train that Daugherty was then staggering up the track in a drunken condition. But the evidence also shows that this train did not arrive at Evelyn for more than an hour after Daugherty had made the curve in safety and with only a short distance to go before reaching his home. This he could have accomplished within five or ten minutes. From the evidence, we are left to speculate whether or not Daugherty had reached his home and after staying there awhile had, through some drunken whim, determined to revisit the depot. This hypothesis may account for the absence of the lantern at the point where the body was found. Of course any duty which appellee might have owed him originally ceased if Daugherty reached a place of safety, and therefore under such circumstance if Daugherty was killed on his way back to the depot, being then a trespasser the appellee owed him no lookout duty. Further, he may have been in a place of safety as the train passed by him, and the absence of marks on the engine and cars immediately behind it would rather indicate this view, and he may have attempted to board the train, and in so doing been thrown under it and killed. These suggestions are as much in accord with the evidence as is appellant's theory that Daugherty, after passing around the curve, fell in a drunken stupor on the tracks and was killed because of Miss Linn's failure to warn the train dispatcher of Daugherty's condition and place of peril. Thus it is seen that we are absolutely left to speculate concerning the manner of this man's death. It is incumbent on one seeking to recover for injuries to establish not only the injury and the negligence but also that the negligence was the proximate cause of the injury, and where under all the evidence the injury may as reasonably be attributed to some cause independent of the negligence proved for which defendant would not be responsible as to negligence, the case should not be submitted to the jury. L. & N. R. R. Co. v. Vanover's Admr., 203 Ky.

390, 262 S. W. 606; Gregory's Admx. v. Director General of Railroads, 195 Ky. 289, 242 S. W. 373; Weidekamp's Admx. v. L. & N. R. Co., 159 Ky. 674, 167 S. W. 882; L. & N. R. Co. v. Stayton's Admr., 163 Ky. 760, 174 S. W. 1104; Thomas' Admr. v. Eminence Distilling Co., et al., 151 Ky. 29, 151 S. W. 47; Caldwell's Admr. v. C. & O. R. Co., 155 Ky. 609, 160 S. W. 158; Siemer v. C. & O. Ry. Co., 180 Ky. 111, 201 S. W. 469; Sutton's Admr. v. L. & N. R. Co., 168 Ky. 81, 181 S. W. 938; Johnson v. M. & O. R. Co., 178 Ky. 108, 198 S. W. 538; C. & O. R. Co. v. Walker's Admr., 159 Ky. 237, 167 S. W. 128; C. N. O. & T. P. Ry. Co. v. Frogg's Admr., 167 Ky. 6, 179 S. W. 1062; L. & N. R. Co. v. Campbell's Admr., 186 Ky. 628, 217 S. W. 687; C. N. O. & T. P. Ry. Co. v. Heath, 187 Ky. 38, 218 S. W. 305; Staley v. Wehmeier, 187 Ky. 445, 219 S. W. 408; L. & N. R. Co. v. Stidham's Admr., 187 Ky. 139, 218 S. W. 460; L. & N. R. Co. v. Cook, 183 Ky. 773, 210 S. W. 661, and Hines, Director General of Railroads v. Walls, 194 Ky. 379, 239 S. W. 451.

It is therefore clear that, for the reasons indicated, the lower court did not err in granting a peremptory instruction at the close of the appellant's case, and for that reason the judgment is affirmed.